[No. 16779-8-III.  Division Three.  December 29, 1998.]
KENT FARMS, INC., *Respondent*, v. ZURICH INSURANCE COMPANY, *Appellant*.

*Jacquelyn A. Beatty* of *Karr Tuttle Campbell*, for appellant.

*Brian H. Miller* of *Dano Miller Ries*, for respondent.

SCHULTHEIS, C.J. — During a delivery of diesel fuel to Kent Farms, Inc., the deliveryman was injured when he was doused with fuel that flowed back from the underground tank and through its shutoff valve. Kent Farms's insurer refused to defend and indemnify Kent Farms contending the injuries were excluded under the pollution exclusion clause. Finding that clause ambiguous, the superior court

granted Kent Farms's motion for summary judgment. We agree with the reasoning of the superior court and affirm.

## FACTS

On August 5, 1994, Steven Gugenberger was delivering diesel fuel to one of the storage tanks at Kent Farms. After the fuel had been pumped from his truck to the tank, he shut off the valve to the tank and proceeded to remove the hose. As he did, the fuel came back through the valve from the tank. He tried his best to reattach the hose in order to stop the spill of thousands of gallons of diesel fuel, but before he could do so, he was totally doused in fuel. Fuel went down his throat and into his lungs and stomach.

Mr. Gugenberger filed a complaint against Kent Farms. He alleged that as a result of his inhalation and swallowing of fuel he suffered damages including physical and emotional injuries, medical expenses, loss of enjoyment of life and disability.

Zurich Insurance Company insured Kent Farms with a commercial insurance policy, which included farm liability coverage. The insuring agreement provides coverage if a third party claim seeks damages for "bodily injury" caused by an "occurrence." The parties do not dispute that Mr. Gugenberger's claim satisfies the policy definitions of "bodily injury" and "occurrence."

The farm liability coverage contains various express exclusions. At issue is the pollution exclusion, which reads:

This insurance does not apply to:

. . . .

c. (1)  "Bodily injury" and "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a)  At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any "insured";

. . . .

(d)   At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations;

(i)   If the pollutants are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor; . . .

. . . .

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Kent Farms requested Zurich defend and indemnify it for Mr. Gugenberger's claim. Zurich declined. Kent Farms filed a declaratory action. Both parties filed motions for summary judgment. The trial court granted summary judgment to Kent Farms, declaring Zurich had a duty to defend and indemnify. Zurich appeals.

## ANALYSIS

In reviewing an order of summary judgment, we engage in the same inquiry as the trial court. *Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 249, 850 P.2d 1298 (1993). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Clements*, 121 Wn.2d at 249. The appellate court considers the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Id.* The motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. *Id.* Here, both parties moved for summary judgment.

The interpretation of an insurance policy is a question of law for the court. *Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 424, 932 P.2d 1244 (1997); *City of Redmond v.*

*Hartford Accident & Indem. Ins. Co.*, 88 Wn. App. 1, 7, 943 P.2d 665 (1997), *review denied*, 134 Wn.2d 1001 (1998). Certain basic principles apply when examining an exclusionary clause in insurance contracts. Coverage exclusions are contrary to the fundamental purpose of insurance and will not be extended beyond their clear and unequivocal language. *Stuart v. American States Ins. Co.*, 85 Wn. App. 321, 325-26, 932 P.2d 697 (1997), *aff'd*, 134 Wn.2d 814, 953 P.2d 462 (1998). Exclusions, therefore, are strictly construed against the insurer. *Findlay v. United Pac. Ins. Co.*, 129 Wn.2d 368, 374, 917 P.2d 116 (1996); *Stuart*, 85 Wn. App. at 326. Nevertheless, this general rule is merely an aid in determining the intention of the parties. *Farmers Ins. Co. v. Clure*, 41 Wn. App. 212, 215, 702 P.2d 1247 (1985). A strict application should not trump plain, clear language resulting in a strained or forced construction. *See Transcontinental Ins. Co. v. Washington Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 457, 760 P.2d 337 (1988); *see also Teague Motor Co. v. Federated Serv. Ins. Co.*, 73 Wn. App. 479, 484, 869 P.2d 1130 (1994).

The superior court accepted Kent Farms's argument that Zurich's pollution exclusion is ambiguous. Specifically, the court focused upon the definition of pollutant, which the court noted under the right circumstances could apply to almost any substance. Thus, the definition makes the pollution exclusion clause overbroad and capable of many meanings.

An exclusion is ambiguous if, on its face, its language is fairly susceptible to two different but reasonable interpretations. *State Farm Mut. Auto. Ins. Co. v. Ruiz*, 134 Wn.2d 713, 721-22, 952 P.2d 157 (1998); *Peasley*, 131 Wn.2d at 424. But if the language is clear and unambiguous, we must enforce the clause as written and cannot modify the contract or create ambiguity where none exists. *American Nat'l Fire Ins. Co. v. B&L Trucking & Constr. Co.*, 134 Wn.2d 413, 428, 951 P.2d 250 (1998); *Peasley*, 131 Wn.2d at 424. When analyzing the policy and reviewing for an ambiguity, policy language is construed as if read by an average

insurance purchaser. *Id.*; *see also Queen City Farms, Inc. v. Central Nat'l Ins. Co.*, 126 Wn.2d 50, 66, 882 P.2d 703 (1994), 891 P.2d 718 (1995). Any ambiguities in an insurance policy are strictly construed against the insurer. *Peasley*, 131 Wn.2d at 424; *see also Greer v. Northwestern Nat'l Ins. Co.*, 109 Wn.2d 191, 201, 743 P.2d 1244 (1987).

■ In *Cook v. Evanson*, 83 Wn. App. 149, 920 P.2d 1223 (1996), *review denied*, 131 Wn.2d 1016 (1997), the court found a similar pollution exclusion precluded coverage for injuries resulting from exposure to fumes that escaped during the negligent application of a concrete sealant. The substance at issue was a concrete sealant intended to be applied only to the exterior of the building. The contractors failed to properly seal off the building and several workers inside became ill as a result of breathing the fumes. The court found the pollution exclusion, similar to the one here, was not ambiguous and because the sealant was described as an irritant and a vapor, the court concluded it fell within the pollution exception. *Id.* at 153-54.

Here, the superior court distinguished *Cook* because that case involved pollution, which the court believed this case did not. The court characterized it as a "huge stretch" to call this a pollution case. The court reasoned that if it applied a merely technical approach, this case would qualify as a pollution case, but at the expense of common sense and a reasonable reading of the policy by an average purchaser.

*Cook* is distinguishable from this case. The sealant at issue was brought to the premises for the purpose of applying it to the exterior of the building. It was a substance that was on the premises for no other purpose and, thus, was inherently toxic or toxic even when applied as intended. However in this case, the alleged "pollutant" was diesel fuel. The fuel was delivered to the farm for use in the operation of the farm. Presumably, the fuel was intended to be used to power farm equipment. In such use, the fuel is not toxic. In other words, the difference between the sealant

and diesel fuel is that the latter is not a pollutant when used as intended.

Moreover, this is not a case involving traditional environmental type damages, i.e., containment and remediation of pollutants that have permeated the land, water or air. Under a reasonable reading of the policy, the pollution exclusion could be construed to limit claims only for traditional environmental damages, for example a gas leak from an underground tank that contaminates surrounding soil and groundwater. However, as Zurich argues, the policy can be given a broader interpretation, precluding the type of claim presented here. Under these circumstances, diesel fuel, when ingested, is toxic and an irritant. Given that both interpretations are reasonable, this pollution exclusion clause should be deemed ambiguous.

Because ambiguous clauses are construed against the insurer, and because the insurer must use clear language when limiting its liability, and it did not, summary judgment was properly granted to Kent Farms and denied to Zurich.

The judgment of the superior court is affirmed.

KATO, J., concurs.

KURTZ, J. (dissenting) — Because I agree with the reasoning stated in *Cook v. Evanson*, 83 Wn. App. 149, 920 P.2d 1223 (1996), *review denied*, 131 Wn.2d 1016 (1997), and do not believe it is distinguishable, I respectfully dissent. The language of the exclusion is not ambiguous. A provision is ambiguous only if on its face it is susceptible to different, reasonable interpretations. *Id.* at 152. The language at issue here is not susceptible to more than one reasonable interpretation. Because the policy language is clear, we should construe it as written and not create ambiguity.

Review granted at 137 Wn.2d 1032 (1999).